UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br><br>    Eric L. Bizeau,<br><br>        Debtor. | Case No. 24-11074-rmb<br><br>Chapter 7 |

**DECISION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS**

Debtor Eric Bizeau ("Bizeau") listed on his schedules a debt owed to the U.S. Small Business Administration based on a guarantee his wife signed for a loan related to her insurance business. Bizeau did not sign the loan documents, but he contends that he and/or his property are liable for the debt under Wisconsin law. The debt at issue is a non-consumer debt. If Bizeau is able to claim the debt as his own, then his debts are not primarily consumer debts and his chapter 7 case cannot be dismissed for abuse under 11 U.S.C. § 707(b). The U.S. Trustee argues that neither Bizeau nor his property are liable for the debt because Bizeau's wife received a chapter 7 discharge in late 2023. The Court agrees with the U.S. Trustee that neither Bizeau nor his property is liable for the debt. Bizeau's debts are therefore primarily consumer debts, and this case is subject to review for abuse under § 707(b).

**BACKGROUND**

Bizeau and the U.S. Trustee submitted a stipulated set of facts. This decision is based on those stipulated facts and the other undisputed facts in the record.

Bizeau married Melissa Ann Bizeau (referred to herein as "Melissa") on June 19, 2020. They have resided in Wisconsin during the marriage. On December 18, 2020, they entered into an Opt Out Marital Property Agreement (the "Marital Agreement"). At the time they entered into the Marital Agreement, Melissa owned and operated an insurance business named Bizeau

Agency, Inc. (the "Agency"). Bizeau and Melissa intended the Marital Agreement to shield Bizeau from liabilities related to the Agency that Melissa had incurred before the marriage.

On February 9, 2021, Melissa, on behalf of the Agency, took out a loan from the U.S. Small Business Administration ("SBA") in the amount of $105,200. The loan was intended to provide economic assistance to the Agency related to the Covid-19 pandemic. The loan amount was later increased to $421,100.00. Melissa signed an Unconditional Guarantee pursuant to which she personally guaranteed repayment of the entire loan. The SBA did not receive a copy of the Marital Agreement before extending the loan.

On August 28, 2023, Melissa filed a voluntary chapter 7 petition in this district, Case No. 23-11512. Melissa's schedules included an unsecured debt owed to SBA Disaster Loan Servicing Center in the amount of $425,088.66 (the "SBA Debt"). The SBA Debt was based on the Unconditional Guarantee that Melissa signed. The SBA Debt was more than half of Melissa's total stated liabilities of $704,492.83.[1] Melissa's Official Form 122A-1 Chapter 7 Statement of Your Current Monthly Income, which is used to determine whether a motion to dismiss under § 707(b) can be brought, was blank, and she filed a Statement of Exemption from Presumption of Abuse Under § 707(b)(2) because her debts were not primarily consumer debts. On December 11, 2023, the Court entered an Order of Discharge, which granted Melissa a discharge under 11 U.S.C. § 727. On April 24, 2024, the chapter 7 trustee filed a no-asset report and the case was closed.

One month later, on May 29, 2024, Bizeau filed a voluntary chapter 7 petition. On page 6 of the petition, he answered "Yes" to the question to the question "Are your debts primarily consumer debts?" He filed the required statements and schedules on June 12, 2024. His

---

[1] Melissa later amended her schedules, and the total debt on her amended schedules was $708,874.56.

schedules included total debt of $165,247.25. The parties agree that all the debts initially listed on the schedules are consumer debts. Bizeau's Official Form 122A-1 Chapter 7 Statement of Your Current Monthly Income ("CMI Form") indicated that his annualized income was $119,746.08, just shy of the median household income of $122,571.00 for a family of four in Wisconsin.

On August 12, 2024, the United States Trustee filed a motion to dismiss the case for abuse under 11 U.S.C. § 707(b). The U.S. Trustee contended that Bizeau had not properly accounted for Melissa's income. With Melissa's income appropriately added, Bizeau's income would be above median, making his case subject to dismissal under § 707(b)(2).

Bizeau responded by filing several documents. First, he amended his schedules. As relevant here, the amended schedules indicate that Bizeau has $148,636.57 in secured debt, and $506,085.32 in unsecured debt. The added debts include tax debt owed to the Internal Revenue Service and the Wisconsin Department of Revenue.[2] Bizeau also added a debt owed to SBA Disaster Loan Servicing Center in the amount of $425,088.66. The stated basis for the debt is "EIDL Loan personally guaranteed by Debtor's non-filing spouse." The parties agree that this debt is the SBA Debt based on the Unconditional Guarantee Melissa signed. Bizeau did not sign the Unconditional Guarantee, or any of the loan documents for the SBA loan to the Agency.

Bizeau also filed an amended CMI Form. The amended form is blank and is accompanied by a Statement of Exemption from Presumption of Abuse Under § 707(b)(2), in

---

[2] The parties appear to dispute whether the tax debt is owed by Bizeau at all and if so whether it is consumer debt. This dispute is irrelevant to the U.S. Trustee's motion to dismiss because the tax debt is not more than half of Bizeau's other debts.

3

which Bizeau certified that his debts are not primarily consumer debts so he is not subject to any presumption of abuse in § 707(b).[3]

Finally, Bizeau objected to the U.S. Trustee's motion to dismiss. He says that he initially believed he was not liable on the SBA Debt based on the terms of the Marital Agreement, but after reviewing the agreement in more detail, he concluded that he is liable on the debt because the agreement covered only liabilities that preceded the marriage. Bizeau argues that he is liable on the SBA Debt, so his debts are not primarily consumer debts and his case cannot be dismissed under § 707(b). The U.S. Trustee and Bizeau agree that Bizeau's liability (or not) on the SBA Debt is a threshold question that must be decided before the motion to dismiss can be finally resolved, and the parties submitted briefing on that issue.

## DISCUSSION

The U.S. Trustee seeks dismissal of this chapter 7 case under 11 U.S.C. § 707(b). Under that section, a chapter 7 case can be dismissed or, with consent of the debtor, converted to a case under chapter 11 or chapter 13, if the court "finds that the granting of relief would be an abuse of the provisions of [chapter 7]." 11 U.S.C. § 707(b)(1). In considering a motion under § 707(b), a court "shall presume abuse exists" if the debtor's current monthly income, calculated using a formula in the statute, is greater than a specified amount. 11 U.S.C. § 707(b)(2). Debtors whose income is less than the state median income for a household of their size are not subject to the presumption in § 707(b)(2).

The abuse provisions in § 707(b) apply only to "a case filed by an individual debtor . . . whose debts are primarily consumer debts." 11 U.S.C. § 707(b)(1). The cases of corporate

---

[3] Curiously, on the cover page for Bizeau's amended schedules, in response to the question, "What kind of debt do you have?" Bizeau answered, "Your debts are primarily consumer debts." *See* Dkt. No. 20 at 1.

4

debtors and individuals whose debts are not primarily consumer debts are not subject to dismissal under § 707(b).

A "consumer debt" is a "debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).  Debts incurred with a profit motive ordinarily are not consumer debts.  *In re Stewart*, 175 F.3d 796, 807 (10th Cir. 1999) ("the weight of the case law on this issue conclusively shows it is a 'consumer debt' if it is based on a non-profit motive").  The SBA Debt was incurred with a profit motive because the loan was made in furtherance of the Agency's business.  Therefore, the SBA Debt is not a consumer debt.

Courts have generally determined that an individual's debts are "primarily consumer debts" if the dollar amount of the debtor's consumer debts is more than half the total amount of all debt.  *Stewart*, 175 F.3d at 808 ("consumer debt must exceed more than half the total debt for dismissal under § 707(b)"); *see also In re Hlavin*, 394 B.R. 441, 446 (Bankr. S.D. Ohio 2008) ("The majority view is that a debtor's liabilities are primarily consumer debts if the aggregate dollar amount of such debts exceeds 50% of the debtor's total liabilities.").  The amount of the non-consumer SBA Debt is more than the amount of Bizeau's other debts.  If the SBA Debt is a debt owed by Bizeau, then Bizeau's debts are not primarily consumer debts and his case is not subject to dismissal under § 707(b).  If the SBA Debt is not a debt owed by Bizeau, then his debts are primarily consumer debts and the case may be analyzed for abuse under § 707(b).

A "debt" is a "liability on a claim."  11 U.S.C. § 101(12).  A "claim" is a "right to payment" or a "right to an equitable remedy."  *Id.* § 101(5).  A debtor owes a debt if the creditor at issue has a right to payment or a right to an equitable remedy against the debtor or his property.  To determine whether SBA has a claim against Bizeau or his property, it is necessary to survey certain aspects of Wisconsin marital property law.

In 1983, Wisconsin adopted the Marital Property Act, which is codified in chapter 766 of the Wisconsin Statutes. 1983 Wis. Act 186. The Marital Property Act was amended in 1985 and 1987 but has remained largely unchanged since then. *See* 1985 Wis. Act 37; 1987 Wis. Act 393. The Marital Property Act was modeled on the Uniform Marital Property Act. *See* Wis. Stat. § 766.96.

In general, the Marital Property Act designates property as either marital property jointly owned by both spouses or individual property owned by one spouse. The Act provides specific rules for classification of property based on, among many other circumstances, the date of the marriage, the date of the couple's residency in Wisconsin, the nature of the property, and the existence of any agreement as between the spouses. The Act also includes a presumption that "[a]ll property of spouses is presumed to be marital property." Wis. Stat. § 766.31(2).

Additionally, and as relevant to this case, the Act includes the following provisions regarding the use of marital property to satisfy obligations of spouses:

> (a) A spouse's obligation to satisfy a duty of support owed to the other spouse or to a child of the marriage may be satisfied only from all marital property and all other property of the obligated spouse.
> (b) An obligation incurred by a spouse in the interest of the marriage or the family may be satisfied only from all marital property and all other property of the incurring spouse.
> (bm) An obligation incurred by a spouse that is recoverable under s. 46.27 (7g), 2017 stats., or s. 49.496, 49.682, or 49.849 may be satisfied from all property that was the property of that spouse immediately before that spouse's death.
> (c)  1. An obligation incurred by a spouse before or during marriage that is attributable to an obligation arising before marriage or to an act or omission occurring before marriage may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the marriage.
>     2. An obligation incurred by a spouse before, on or after January 1, 1986, that is attributable to an obligation arising before January 1, 1986, or to an act or omission occurring before January 1, 1986, may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse

>but for the enactment of this chapter.
>(cm) An obligation incurred by a spouse during marriage, resulting from a tort committed by the spouse during marriage, may be satisfied from the property of that spouse that is not marital property and from that spouse's interest in marital property.
>(d) Any other obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, may be satisfied only from property of that spouse that is not marital property and from that spouse's interest in marital property, in that order.

Wis. Stat. § 766.55(2).  The term "obligation" is not defined in the statute, but it appears to be similar to the term "debt" used in the Bankruptcy Code.  *See also* OBLIGATION, Black's Law Dictionary (5th ed. 1979) ("[A]ny duty imposed by law, promise, contract, relations of society, courtesy, kindness, etc."); *id.* ("A formal, binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing.").

The drafters of the Uniform Marital Property Act explained that "the section [enacted as Wis. Stat. § 766.55(2)] proceeds to establish four categories of obligations with which a couple may be involved, and to clarify what property is available to satisfy those different categories of obligations."  Obligations of Spouses., Uniform Marital Property Act § 8, cmt.  The section does not, however, "change substantive and procedural rules for establishing and enforcing the personal liability of a debtor to a creditor."  Christine Rew Barden, et al., *Marital Property Law & Practice in Wisconsin*, § 10.49 (5th ed. 2019).  Creditors seeking to establish liability of a spouse must look to their contract, statutory provisions, or other law that would render one spouse or the other liable for a particular debt.  *See id.* § 9.81 ("Although a spouse who contracts for goods or services is personally liable to the creditor by contract, generally the noncontracting spouse is not personally liable to the creditor.").[4]

---

[4] The parties to a debt transaction can change the general rules under Wis. Stat. § 766.55(2), and the statute includes provisions for some ways liability can be altered.  For example, a creditor may expressly agree to diminish its rights to collect from marital property.  Wis. Stat. § 766.55(4).  In addition, a married couple can agree to allocate

7

Wisconsin procedure allows a creditor with a debt subject to Wis. Stat. § 766.55(2) to "proceed against the obligated spouse, the incurring spouse or both spouses." Wis. Stat. § 803.045. That is, one spouse can be sued for obligations of the other, but only if the purpose is to reach marital property available under Wis. Stat. § 766.55(2). "Nothing in § 803.045 . . . imposes a liability against either spouse under § 766.55(2)(a) or (b). . . . Rather, § 803.045 is procedural. It authorizes a creditor to proceed against a spouse under the circumstances described in the statute to reach the property described in § 766.55(2)." *St. Mary's Hosp. Med. Ctr. v. Brody*, 186 Wis. 2d 100, 113 (Ct. App. 1994).

In their briefs, the parties use the terms "marital liability," "marital obligation," and "marital debt." Those terms are not used in either the Wisconsin Marital Property Act or the Bankruptcy Code. However, Wisconsin courts have used terms like "marital debt" and "marital obligation" to describe certain debts of spouses. *See, e.g.*, *Park Bank-West v. Mueller*, 151 Wis. 2d 476, 486-87 (Ct. App. 1989); *Bank One, Appleton, NA v. Reynolds*, 176 Wis. 2d 218, 221 (Ct. App. 1993); *Curda-Derickson v. Derickson*, 2003 WI App 167, ¶ 13. The courts' use of these terms is generally in the context of describing debts that were incurred by both spouses jointly, either by contract or by law, or debts that were incurred by one spouse in the interest of the marriage or family and subject to Wis. Stat. § 766.55(2)(b). The terms "marital debt" and "marital obligation" are therefore shorthand references to debts that may be satisfied from all marital property; they are not debts incurred by one spouse for which the other, non-incurring spouse is personally liable merely by virtue of the marriage.

---

responsibility for certain obligations in a written agreement, but the agreement must be provided to a creditor when an obligation is incurred if it adversely affects the rights of a creditor. Wis. Stat. § 766.55(4m). The parties agree that the SBA did not receive a copy of the Bizeaus' Marital Agreement before extending the loan to the Agency, so the Marital Agreement has no effect on Bizeau's liability, or not, for the SBA Debt.

8

In this way, a "marital debt" or "marital obligation" is similar to a "community claim," which is a term defined in the Bankruptcy Code. A "community claim" is a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in [11 U.S.C. § 541(a)(2)] is liable, whether or not there is any such property at the time of the commencement of the case." 11 U.S.C. § 101(7). Under § 541(a)(2), property of the bankruptcy estate includes

> All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
> (A) under the sole, equal, or joint management and control of the debtor; or
> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

11 U.S.C. § 541(a)(2). Taken together, these provisions mean that, as to a married Wisconsin debtor, all marital property becomes property of the estate when either spouse files bankruptcy, and a creditor with a claim that may be satisfied from marital property has a claim against the bankruptcy estate by virtue of that creditor's claim against the debtor's marital property.

The U.S. Trustee argues that Wis. Stat. § 766.55(2)(b) is the provision applicable to the SBA debt. In response, Bizeau's arguments are undeveloped, and he does not cite any specific provision of Wis. Stat. § 766.55(2) that applies to the SBA Debt. In the absence of developed arguments from Bizeau, the Court has undertaken its own review of Wis. Stat. § 766.55(2) to determine which subsection applies to the SBA Debt. This case does not involve the recoverable obligations, premarital obligations, or tort obligations addressed in subsections (bm), (c) and (cm) of section 766.55, so the Court will not discuss those subsections in detail.

Subsection (a) involves "[a] spouse's obligation to satisfy a *duty of support* owed to the other spouse or to a child of the marriage." Wis. Stat. § 766.55(2)(a) (emphasis added). Such obligations "may be satisfied only from all marital property and all other property of the

9

obligated spouse." *Id.* Section 766.55(2)(a) does not impose a duty of support. A spouse's duty of support, and the obligation to pay debts in furtherance of that support, must be found in a different statute. For example, Wisconsin law provides that "[e]ach spouse has an equal obligation in accordance with his or her ability to contribute money or services or both which are necessary for the adequate support and maintenance of his or her minor children and of the other spouse." Wis. Stat. § 765.001(2).

The Wisconsin Court of Appeals addressed § 766.55(2)(a) in *St. Mary's Hospital Medical Center v. Brody*, 186 Wis. 2d 100 (Ct. App. 1994). In that case, St. Mary's provided medical services to the husband, resulting in a debt for those services. Several months later, the husband and wife divorced. St. Mary's sought to collect the debt from the ex-wife. The ex-wife argued that she was not personally liable for the debt and that St. Mary's could collect the debt only from property that was previously the couple's marital property. The trial court agreed and entered a judgment limiting St. Mary's collection rights to "the value of the marital property at the date of [the] divorce." *Id.* at 102. The Court of Appeals reversed. The court held that the ex-wife was personally liable on the underlying debt under Wisconsin law based on her duty to support the husband under Wis. Stat. § 765.001(2). *Id.* at 113. The ex-wife's duty of support included the duty to pay her husband's medical bills, which made her an "obligated spouse" under Wis. Stat. § 766.55(2)(a). St. Mary's could satisfy the debt from the marital property and from the ex-wife's individual property. *Id.*

Neither the U.S. Trustee nor Bizeau argues that the SBA Debt is for support or maintenance of Bizeau, Melissa, or their children. In his objection to the U.S. Trustee's motion to dismiss, Bizeau asserts that he is "equally responsible" for Melissa's debts, citing *St. Mary's*. Dkt. No. 33 at 4. The full sentence in *St. Mary's* from which Bizeau plucks the term "equally

10

responsible" states, "The court properly concluded that because Cynthia was married to Forest when he incurred necessary medical expenses, she is equally responsible to St. Marys for the debt *under § 765.001(2)*." *St. Mary's*, 186 Wis. 2d at 109 (emphasis added). As discussed, § 765.001(2) imposes by law an obligation for spouses to provide adequate support and maintenance to one another, and that law made the wife "equally responsible" for the husband's medical debt. Other than the incomplete quotation from *St. Mary's*, Bizeau does not explain how the SBA Debt was for support and maintenance under § 765.001(2). Without further argument from Bizeau, the Court concludes Bizeau is not personally liable on the SBA Debt under the Wisconsin duty of support law that rendered the wife liable in *St. Mary's*, and the SBA cannot collect from Bizeau's individual property under Wis. Stat. § 766.55(2)(a).

Under subsection (d), when one spouse incurs liability for "[a]ny other obligation . . . including one attributable to an act or omission during marriage," the resulting obligation "may be satisfied from the property of [the incurring] spouse that is not marital property and from that spouse's interest in marital property, in that order." Wis. Stat. § 766.55(2)(d). Aside from the last phrase that requires marshaling property in a specific order to satisfy the debt, subsection (d) is identical to the tort obligations addressed in subsection (cm). Like the tort obligations in subsection (cm), "the statute does nothing to change the traditional concept of *liability* for the [obligation]." *Bothe by Gross v. Am. Fam. Ins. Co.*, 159 Wis. 2d 378, 382 (Ct. App. 1990) (emphasis in original). When one spouse incurs an obligation covered subsection (d), the other spouse is not liable for the debt. *Id.* at 383 (noting that the non-incurring spouse "is not legally liable" for the other spouse's tort obligations). The non-incurring spouse's marital property may be used to satisfy the obligation, but only the incurring spouse's share of that property. *Schultz v. Sykes*, 248 Wis. 2d 791, 797-98 (Ct. App. 2001) (holding that creditor could garnish non-

incurring spouse's wages to reach incurring spouse's share of those wages).  The non-incurring spouse will retain his share of the marital property.  *Bothe*, 159 Wis. 2d at 383.

As discussed below, the Court has presumed that the SBA Debt was incurred in the interest of the Bizeaus' marriage or family such that subsection (b) is applicable to collection of the SBA Debt.  It is not clear, however, that the statutory presumption should apply.  Melissa incurred the debt in furtherance of her business, and it may be there is evidence sufficient to overcome the presumption that the debt was incurred in the interest of the marriage or family.  *But see Herdt v. Herdt*, 152 Wis. 2d 17, 22 (Ct. App. 1989) (holding that the trial court did not clearly err when it determined that a wife's share of marital property was liable for a business debt incurred by the husband because the business's profit "would have been part of the marital estate").  If the presumption does not apply to the SBA Debt, then subsection (d) would be the operative provision for collection of the SBA Debt, and only Melissa's individual property and her share of the marital property could be used to satisfy the debt.  But without evidence or argument from the U.S. Trustee to rebut the presumption, subsection (d) cannot apply to the SBA Debt, and the Court must presume that subsection (b) applies.

Turning to subsection (b) of § 766.55(2), that provision involves obligations "incurred by a spouse in the interest of the marriage or the family."  Wis. Stat. § 766.55(2)(b).  Such obligations "may be satisfied only from all marital property and all other property of the incurring spouse."  *Id.*  As noted, the statute includes a presumption that an obligation incurred by either spouse during marriage is "incurred in the interest of the marriage or the family."  Wis. Stat. § 766.55(1).  Because of the presumption, most debts incurred by one spouse during a marriage may be satisfied as provided in subsection (b)—*i.e.*, by collecting from either marital property or from individual property of the incurring spouse.

12

Importantly, § 766.55(2)(b) does not provide that the individual property of the non-incurring spouse is liable to satisfy the debts of an incurring spouse. If a non-incurring spouse is not otherwise liable to a creditor, either by contract or by law, the presumption in § 766.55(1) and the collection provision of § 766.55(2)(b) do not transform one spouse's debt into the other spouse's liability.

The Seventh Circuit addressed the liability of spouses under Wis. Stat. § 766.55(2)(b) in a different context in *Smith v. Capital One Bank (USA), N.A.*, 845 F.3d 256 (7th Cir. 2016). In that case, the debtor filed a chapter 13 bankruptcy petition without her spouse. *Id.* at 258. The debtor's non-filing spouse obtained a credit card that he used for family-related purchases. *Id.* While the bankruptcy was pending, Capital One Bank, the card issuer, sued the debtor's non-filing spouse in state court and obtained a judgment against the non-filing spouse. *Id.* The creditor took no other action to collect the debt. *Id.* The debtor argued that Capital One's actions violated the co-debtor stay under 11 U.S.C. § 1301, which stays collection efforts to collect a consumer debt from "any individual that is liable on such debt with the debtor." 11 U.S.C. § 1301(a).

The Seventh Circuit held that the debtor's non-filing spouse was not protected by the co-debtor stay because the bankrupt spouse was not personally liable on the credit card. 845 F.3d at 261 ("[Wisconsin]'s marital laws do not give rise to direct causes of action against, or liability on the part of, the non-incurring spouse."). "Ordinarily, one's credit card debt is one's own, and the co-debtor stay would not bar a creditor from collecting on a non-bankrupt spouse's own debts simply because the other spouse had filed for bankruptcy." *Id.* at 259. The court rejected the debtor's argument that Wisconsin's marital property laws transformed the non-filing husband's credit card debt into a liability of the debtor wife. "Simply obtaining a judgment against a non-

13

filing spouse who happens to have shared property interests with the filing spouse, without more, does not make the debts involved in that lawsuit debts of the filing spouse under Wisconsin law." *Id.* at 261. The court agreed that Capital One could not satisfy its judgment against the non-filing husband by pursuing the couple's marital property because the debtor had an interest in the marital property and pursuit of that property would violate the automatic stay under 11 U.S.C. § 362(a). *Id.* at 260. But the co-debtor stay under § 1301 did not protect the husband because the husband and wife were not jointly liable on the debt. The creditor was free to pursue the non-filing spouse and his individual property notwithstanding the bankruptcy of his spouse.

Here, the Seventh Circuit's decision in *Smith* means that Bizeau is not personally liable on the SBA Debt because he is not the incurring spouse. He did not sign the loan documents, and aside from § 766.55, Bizeau has not identified any law that would render him personally liable to the SBA as an obligated or incurring spouse.

Bizeau argues that *Smith* is inapposite because this case does not involve the co-debtor stay or a consumer debt. But the significance of the case lies in the Seventh Circuit's holding that Wisconsin's marital property laws do not render one spouse liable for the debts of another. Thus, Bizeau is not, and never was, personally liable to the SBA. The SBA does not have a right to payment from Bizeau or his individual property. Under Wis. Stat. § 766.55(2)(b), the debt could be satisfied from certain of Bizeau's property, but only his marital property shared with Melissa.

The next question, and the one not answered by *Smith*, is whether any of Bizeau's marital property is still liable for the SBA Debt notwithstanding Melissa's discharge. The Court holds that it is not, because Melissa's discharge renders the marital property unavailable to creditors.

14

Melissa received a discharge in her chapter 7 case on December 11, 2023. *See* Order of Discharge, Case No. 23-11512, Dkt. No. 35. The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). "Nothing in § 524 expunges or extinguishes discharged debts—they simply may not be enforced as a personal liability of the debtor." *In re Mogg*, No. 05-34066, 2007 WL 2608501, at *3 (Bankr. S.D. Ill. Sept. 5, 2007); *see also In re Irby*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005) ("Nowhere in the Bankruptcy Code does it provide that a debt is extinguished. . . . [U]pon discharge, it is only a debtor's personal obligation to pay the debt that is effectively extinguished; the debt itself remains."). The SBA Debt still exists, but the SBA can no longer attempt to collect the SBA Debt from Melissa or her property.

When Melissa filed bankruptcy, all the couple's marital property that existed on the petition date became part of the bankruptcy estate in her case. *See* 11 U.S.C. § 541(a)(2). The chapter 7 trustee in Melissa's case determined that no assets were available to distribute to creditors, and the property passed through the bankruptcy as exempt. "Exempt property, with exceptions not applicable here, is not available for recovery for discharged debts." *In re Schmiedel*, 236 B.R. 393, 398 (Bankr. E.D. Wis. 1999) (citing 11 U.S.C. § 522(c)). Melissa's pre-petition marital property is not available to satisfy the SBA Debt. Nor is Melissa's post-petition, after-acquired marital property available to the SBA, because the discharge injunction specifically covers such property, with exceptions not applicable here. *See* 11 U.S.C. § 524(a)(3); *see also In re Strickland*, 153 B.R. 909, 913 (Bankr. D. N.M. 1993) ("[A] discharge of community claims operates as an injunction against attempts to collect a community debt from after-acquired community property.").

15

Wisconsin law treats all marital property as being owned entirely by both spouses, with each spouse having an "undivided one-half interest in each item of marital property." Wis. Stat. § 766.31(3). Melissa's marital property is necessarily Bizeau's marital property. Therefore, the discharge injunction that prevents collection of the SBA Debt from Melissa's marital property necessarily prevents collection of the SBA Debt from Bizeau's marital property. *See In re Moore*, 318 B.R. 679, 681 (Bankr. W.D. Wis. 2004) ("[T]he wife's interest in property acquired after her husband's discharge is rendered unavailable to the wife's creditors."). The SBA has no right to payment from Bizeau's marital property because the discharge injunction entered in Melissa's case operates to permanently enjoin the SBA's right to payment from that property.[5]

## CONCLUSION

In summary, Bizeau is not personally liable to the SBA because he did not sign or otherwise agree to be bound by the loan documents evidencing the SBA Debt and no other statute or law makes him personally liable for the debt; Bizeau's individual property cannot be used to satisfy the SBA Debt because he is not an incurring or obligated spouse; and Bizeau's marital property cannot be used to satisfy the SBA Debt because the discharge injunction entered in Melissa's case prevents collection of the SBA Debt from the couple's marital property.

---

[5] When Bizeau filed his petition, the period during which the U.S. Trustee, the chapter 7 trustee, or a creditor could seek revocation of Melissa's discharge under 11 U.S.C. § 727(d) had not yet passed. *See* 11 U.S.C. § 727(e). It was therefore *possible* on Bizeau's petition date that Melissa's discharge might be revoked. If that had happened, then Bizeau's marital property would once again be available to satisfy the SBA Debt. In his briefs, Bizeau says his liability on the SBA Debt is "contingent," but he never cites § 727(d) or makes any argument related to the possibility that his marital property might be available to pay the SBA Debt based on the potential for revocation of Melissa's discharge.

The revocation of a debtor's discharge under § 727(d) is exceedingly rare and requires a specific finding that, for example, a debtor committed fraud or refused to obey a court order. The potential for revocation of a court order may not be the sort of contingency that would lead to a "contingent" claim as that term is used in the Bankruptcy Code. After all, most court orders, even final orders, have the potential to be vacated for a variety of reasons. *See, e.g.*, Wis. Stat. § 806.07(1); Fed. R. Civ. P. 60(b). Without the benefit of any argument from the parties that the SBA Debt was "contingent" during the period that Melissa's discharge could be revoked, the Court declines to address the issue.

Because the SBA does not have a right to payment from Bizeau or any of his property, the SBA does not have a claim in this case and the SBA Debt was not properly included on Bizeau's schedules.

The parties agree that all Bizeau's other debts are consumer debts. Without the SBA Debt, Bizeau's debts are "primarily consumer debts." Bizeau is therefore subject to the requirements of 11 U.S.C. § 707(b), and this case can be dismissed for abuse. Nevertheless, the case is not yet ripe for dismissal. The U.S. Trustee initially challenged the figures on Bizeau's CMI Form, arguing that he inappropriately calculated his household income, that he is an above-median-income debtor, and that the presumption of abuse in § 707(b)(2) applies. This argument has not been tested, because Bizeau's response to the U.S. Trustee's motion to dismiss was to amend the CMI Form and claim status as a non-consumer debtor. Bizeau is now a consumer debtor who must satisfy § 707(b) to stay in chapter 7.

The Court will allow Bizeau an opportunity to do one of the following: (1) he may withdraw his objection to the U.S. Trustee's motion to dismiss, and the case will be dismissed; (2) he may file a notice of his consent to convert this case to one under chapter 11 or 13, and the case will be converted under 11 U.S.C. § 707(b); or (3) he may amend the CMI Form once again, and, if required based on the calculations in the CMI Form, file Official Form 122A-2, Chapter 7 Means Test Calculation. The Court will enter an order consistent with this decision.

Dated: March 21, 2025

_Rachel Blise_
Rachel M. Blise
U.S. Bankruptcy Judge